(C.D. 2369)

COSTA INTERNATIONAL CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 1, 1962)

*Michael Stramiello, Jr.*, for the plaintiff.

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

LAWRENCE, Judge: In this proceeding, plaintiff has filed two protests, 59/33738 and 60/14079, which were consolidated for trial. They relate to importations of merchandise described in the entry papers as "woven wire cloth" with other words of description, which is represented by plaintiff's illustrative exhibit 1, except for size.

The merchandise was classified by the collector of customs as "Fourdrinier wires suitable for use in paper making machines" in paragraph 318 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 318), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, and duty was assessed at the rate of 50 per centum ad valorem.

It is claimed by plaintiff that the merchandise should be classified in said paragraph 318, as modified, *supra*, as "woven wire cloth suitable for use in the manufacture of Fourdrinier wires or cylinder wires, not having more than 55 meshes per lineal inch in warp or filling," which is dutiable at 35 per centum ad valorem.

The pertinent text of paragraph 318, as modified, *supra*, is here set forth:

Fourdrinier wires, suitable for use in paper-making machines (whether or not parts of or fitted or attached to such machines) _____ 50% ad val.

Cylinder wires, suitable for use in paper-making machines (whether or not parts of or fitted or attached to such machines), and woven-wire cloth suitable for use in the manufacture of Fourdrinier wires or cylinder wires:

    Having more than 55 meshes per lineal inch in warp or filling_____ 50% ad val.

    Other_____ 35% ad val.

The question in issue is primarily one of fact which is closely drawn.

Congress saw fit to provide in said paragraph 318 for a woven-wire material, suitable for use in the production of Fourdrinier wires, and also for Fourdrinier wires, suitable for use in paper-making machines. The undisputed evidence in the case satisfies us that the subject merchandise, in its condition as imported, is not Fourdrinier wires, suitable for use in paper-making machines, but is, in fact, a woven-wire cloth, suitable for use in the manufacture of Fourdrinier wires, represented by illustrative exhibit 2.

In support of this conclusion, we have the testimony of plaintiff's two witnesses, Fred W. Cassirer, president of the plaintiff company, who has dealt in merchandise of the class or kind represented by exhibit 1 for more than 40 years, and William H. Fortner who, for the past 4 years, has been paper machine foreman of the Whippany Paper Board Co., Whippany, N.J., but has been engaged in similar work with other companies for approximately 16 years.

Cassirer was shown to have had wide experience in purchasing, importing, and selling merchandise such as exhibit 1, which is im-

ported in rolls in various widths and lengths and is not more than 55 meshes per lineal inch in warp or filling. In the shipments now before the court, the widths vary from a minimum of 90 inches to a maximum of 276 inches, while the lengths have a variance of from 105 feet to 208 feet. Cassirer testified that he sold merchandise like that in these importations exclusively to Fourdrinier-wire manufacturers. He had also seen, repeatedly, over a period of many years, the process by which the merchandise is treated by manufacturers to produce Fourdrinier wires. He described the treatment as follows:

The material is shipped to the Fourdrinier wire manufacturers. It has to be stretched and the borders have to be treated so that they don't fringe out. Then the surface has to be surfaced; that the knuckles have to be eliminated and everything has to be inspected over again. And then the wire has to be seamed to be—to make an endless wire out of it. After having been seamed it has to be stretched over again, inspected over again, and the seam ends have to be protected by, in many cases by a patch out of plastic material.

The merchandise has to be cut to specific lengths and widths, and the edges are bent over with a special instrument to prevent fringing. Cassirer had witnessed the process of converting material like exhibit 1 into Fourdrinier wires frequently, not only in this country but in plants in France, Germany, Austria, and Canada.

Fortner testified that, as a paper machine foreman having general supervision over machines in the entire mill used for the purpose of making paper, the companies with which he had been associated utilize merchandise of the kind represented by illustrative exhibit 2 in the manufacture of paper on Fourdrinier machines; that the function of such wire "* * * is to get the drainage out of the pulp so that the pulp can be formed into a sheet of paper." After examining illustrative exhibit 1, Fortner stated that it was not suitable in that condition for use on a Fourdrinier paper-making machine; neither was it suitable for use on any other kind of paper-making machine; that it must first be made into an article such as illustrative exhibit 2 or properly fashioned for appropriate use on paper machines.

On cross-examination, Fortner stated that merchandise like illustrative exhibit 1 would have to be stretched, trimmed, seamed, and the edges finished, since Fourdrinier wires suitable for use in paper-making machines to produce fine quality writing paper must be made with a high degree of precision.

The testimony of Cassirer and Fortner, both of whom were well informed and experienced in their respective trades, stands unrefuted. It establishes without contradiction that the merchandise here involved is not in its condition as imported suitable for use in paper-making machines; it is nothing more or less than woven-wire cloth, a material suitable for use in the manufacture of Fourdrinier wires. It was error, therefore, to classify the importations as Fourdrinier wires, suitable for use in paper-making machines.

We have examined the cases cited by counsel in their briefs but find it unnecessary to discuss them here.

Upon the record and for the reasons stated, the protests are sustained, and judgment will issue directing the collector of customs to reliquidate the entries accordingly.